

FILED

JUN 21 2005

UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>SWTV PRODUCTION SERVICES, INC.,<br><br>      Debtor. | Chapter 11 Proceedings<br><br>Case No. BR-02-09489-PHX-CGC |
| SWTV PRODUCTION SERVICES, INC., an Arizona corporation,<br><br>      Plaintiff,<br><br>v.<br><br>LAWRENCE E. MEYERS and DAWN BURNSTYN-MEYERS, husband and wife; MARK JOHNSON and JANE DOE JOHNSON, husband and wife; MEYERS ENTERPRISES LIMITED PARTNERSHIP, an Arizona limited partnership,<br><br>      Defendants. | Adversary No. 2-03-01092 |
| MARK JOHNSON, an individual, and LAWRENCE E. MEYERS and MEYERS ENTERPRISES LIMITED PARTNERSHIP,<br><br>      Plaintiffs/Counterclaimants,<br><br>v.<br><br>SWTV PRODUCTION SERVICES, INC., an Arizona corporation,<br><br>      Counterdefendant. | UNDER ADVISEMENT DECISION RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |
| LAWRENCE E. MEYERS and MEYERS ENTERPRISES LIMITED PARTNERSHIP,<br><br>      Crossclaim Plaintiff, | |

| | |
|---|---|
| 1 | v. ) |
| 2 | ) |
| | GREYSTONE CDT ASSOCIATES, ) |
| 3 | LLC; and SCOTT BARKER and JANE ) |
| | DOE BARKER, ) |
| 4 | ) |
| | Crossclaim Defendants. ) |
| 5 | ) |

## I. Introduction

Plaintiff SWTV Production Services ("Debtor") seeks summary judgment on two of its claims against Defendants Lawrence and Dawn Meyers and the Meyers Enterprises Limited Partnership ("Defendants"): Count Two for Unjust Enrichment/Equitable Lien/Constructive Trust and Count Four for Declaratory Judgment. After a hearing on May 10, 2005, the matter was taken under advisement. For the following reasons, summary judgment is denied.

## II. Facts

What happened, when, where and for how much is largely undisputed. The disagreement lies in how the parties characterize their relationship and the various transactions. Were these transactions all part of an above-the-board loan and lease between Debtor and Defendants or did Defendants take advantage of their status as shareholders and members of the board of directors to acquire wealth at Debtor's expense? The difficulty, as will be discussed in a moment, is deciding this on summary judgment.

In June, 1997, Defendant Lawrence Meyers purchased certain real property in Tempe, Arizona, which included various improvements, furniture, fixtures, equipment and personal property. At the time, Mr. Meyers was the chief executive officer and, he claims, sole member of the board of directors and shareholder of Debtor SWTV.

One hundred and seventeen thousand dollars ($117,000) of SWTV's funds were used to make the down payment on the purchase of the property. Defendant Meyers took out a separate loan from Bank of America ("BofA Loan") for approximately $730,000 to fund the remainder of the purchase. The BofA Loan was secured by a deed of trust in its favor. Debtor SWTV guaranteed this loan. The property was titled in Defendants Lawrence and Dawn Meyers names and then leased back to Debtor SWTV as office/warehouse space under a lease agreement beginning June 21, 1997.

- 2 -

Under the lease's terms, SWTV was responsible for all real property and lease taxes, utilities and maintenance expenses. The base monthly rent, excluding taxes, utilities and maintenance, was approximately $9,165. Debtor subordinated the lease agreement to the deed of trust securing the $730,000 BofA Loan. In addition, during 1997, Debtor made and paid for various improvements to the property totaling approximately $74,000.

In June, 1999, Defendants Meyers quit-claimed their interest in the property to Defendant Meyers Limited Partnership ("Partnership") and assigned their interest in the lease to the Partnership. In the same year, Defendant Meyers solicited additional investment in Debtor through Greystone Capital, an investment initially booked as debt but which Defendants argue Greystone represented would be converted to equity at some time.

Subsequently, in September, 2000, the Partnership refinanced the original $730,354 BofA Loan with an $800,000 loan from Wells Fargo ("Wells Fargo Loan"). At the same time, Defendant Meyers executed a Commercial Guaranty ("Guaranty") obligating SWTV to guarantee repayment of the Wells Fargo Loan by the Partnership. The SWTV lease was then again subordinated to the deed of trust now securing the Wells Fargo Loan. Around this same time, SWTV made further improvements to the property for approximately $102,000. Once the Wells Fargo Loan closed, SWTV was repaid approximately $82,000 for improvements it had previously financed. According to Debtor, between the monthly lease payments paid by SWTV and the monthly finance payments on the $800,000 Wells Fargo Loan, Defendants received approximately $1,387.22 a month in profit.

In late 2001, Debtor's books showed approximately $7,000,000 in demand notes owing Greystone, which Defendants contend caused Wells Fargo to elect to withdraw the operating line of credit it had extended Debtor. When this happened, Debtor needed to find a new source of capital to repay Wells Fargo and operate. Debtor negotiated two loans – one for $2 million with CIT and one for $1.5 million with Compass Bank. Both institutions required personal guarantees from Defendants Meyers. Defendants agreed to execute personal guarantees but only if Debtor would forgive the outstanding shareholder loans once Debtor actually used in excess of $300,000 on the new line of credit from Compass Bank.

In Debtor's view, these transactions were fraudulent, done without proper corporate approval

- 3 -

and forced upon SWTV by Defendant Meyers' as CEO, majority shareholder and board member solely to enrich Defendants at Debtor's expense. As a result of Defendants' unjust enrichment, Debtor argues it is entitled to a constructive trust and/or equitable lien in the property. According to Debtor, a constructive trust may be imposed in connection with a breach of fiduciary duty where the fiduciary has acquired a benefit from the breach and an equitable lien may be imposed to prevent an individual from retaining a property interest acquired at the expense of another.

Defendants counter that the $117,000 down payment was a valid shareholder loan made in the normal course of business and that the lease to Debtor was at market rate with the normal attendant obligations of a lessee for taxes, utilities, and improvements. The subsequent forgiveness of this loan was further supported by sufficient consideration.

### III.  Analysis

To prove unjust enrichment in Arizona, Debtor must show that it (1) conferred a benefit upon Defendants; (2) that the benefit was at SWTV's expense; and (3) that it would be unjust to allow Defendants to keep the benefit conferred. *See Murdock-Bryant Const., Inc. V. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197, 1202 (1985). More precisely, when making an unjust enrichment claim, the plaintiff must establish the "absence of justification for the enrichment and the impoverishment and . . . the absence of a legal remedy." *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz. 535, 48 P.3d 485 (App. 2002); *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 898 P.2d 1005 (App. 1995). It is not enough that a benefit was conferred at another's expense: there must be something unjust or inequitable about the enrichment and there must be no other legal remedy available than a claim for unjust enrichment. "The mere fact that one party confers a benefit on another, however, is not of itself sufficient to require the other to make restitution. Retention of the benefit must be unjust." *Pyeatte v. Pyeatte*, 135 Ariz. 346, 661 P.2d 196 (App. 1983). Based on the record provided, the Court cannot grant Debtor summary judgment.

While the record supports Debtor's argument that its funds enriched or benefitted Defendants by purchasing and improving the property for Defendants at allegedly no cost to them (by making monthly lease payments that resulted in additional earnings to Defendants and a reduction of the principal balance owing on the bank loans, by guaranteeing both the original loan and the refinance

- 4 -

with Wells Fargo, and by paying all real estate taxes, utilities and maintenance costs), there are disputed issues of material fact as to whether the benefits were unjustified or inequitable.

According to Defendants, and as supported by various exhibits, the original payment by Debtor of the $117,000 down payment was treated as a shareholder loan scheduled and carried on Debtor's books and reflected in independently audited financial statements. While admittedly no written loan agreement has been provided (and it appears there is none), there is sufficient evidence on summary judgment to create a question of fact as to whether this transaction was in fact a loan or intended to be a loan (even if corporate formalities were not followed) and, if so, what were its terms and was there a breach. In addition, no one disputes that the $117,000 deposit was only that – a deposit, and that Defendant Meyers took out an additional $740,000 loan to fund the remaining purchase price, further detracting from Debtor's argument that it was made to bear the entire financial brunt of purchasing this property to Defendants' sole benefit.

Further, even if we assume Debtor is correct and that the shareholder loan was not entered into following proper corporate procedures, and therefore there is no valid shareholder loan, this does not necessarily give rise only to an unjust enrichment claim. In fact, Debtor has sued for breach of fiduciary duty and breach of contract and couches much of its motion and reply in terms of such claims.[1] If either of these claims were to be successful, the claim for unjust enrichment would not be available to Debtor: Debtor may be placing the cart before the horse here. Further, a failure to follow corporate procedures does not lead this Court

---

[1] The Arizona Supreme Court has in fact held that if there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application. *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174, 548 P.2d 1166, 1171 (1976); *see also Johnson v. American Nat'l Ins. Co.*, 126 Ariz. 613 P.2d 1275 (App. 1980) (quoting a Pennsylvania case: "the quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties 'however harsh the provisions of such contracts may seem in the light of subsequent happenings.'").

-5-

automatically to a finding that the benefit conferred was unjust. There must be more and Debtor simply has not shown it on summary judgment.

Similarly, there is an issue of fact whether the subsequent lease back to Debtor was unjust. Debtor does not claim that the lease terms were onerous or not at a fair market rate. As Defendants have pointed out, Greystone in fact subsequently assumed the lease, which does suggest that the lease terms in fact were fair. Debtor's primary argument seems to be that it was forced by Defendant Meyers, as the controlling shareholder of board of director member, to lease the property. Leasing real property to a company of which you are a majority shareholder or member of the board of directors, however, is not an unusual business practice. And, the fact that Defendants may have also made a profit off the lease back is not enough in and of itself.

For the same reason, it is not inherently unfair (on summary judgment) that Debtor, as lessee, was responsible for paying the utilities and taxes on the property or for paying for the various improvements to the property that were done for its own operations. It is not uncommon for lessees to be responsible for their fair share of the utilities or taxes incurred on the property through triple net provisions. Tenants are also often responsible for making the improvements they need to operate their business at their own expense.

Last, based on the record provided, the Court does not agree that the release of the shareholder loan was necessarily done without adequate consideration. There exists a question of fact on this issue, as Defendants have provided sufficient evidence on summary judgment to suggest that they took on additional financial obligations and liability by personally guaranteeing the $3.5 million worth of loans from Compass Bank and CIT.

IV. Conclusion

Because the Court denies Debtor summary judgment on its unjust enrichment claim, the

- 6 -

Court need not address whether a constructive trust or equitable lien will be imposed. These issues will be addressed once a trial on the merits of the unjust enrichment claim is held. For the same reason, Debtor's request for summary judgment on its declaratory judgment claim is denied. Counsel for Defendants is to lodge a form of order consistent with this decision for the Court's signature.

It is further ordered that the parties shall appear for a Rule 16(b) scheduling conference on **August 17, 2005, at 11:00 a.m.**, United States Bankruptcy Court, 230 N. 1st Ave., Phoenix, Arizona.

So ordered.

DATED: June 21, 2005

_____
CHARLES G. CASE II
United States Bankruptcy Judge

COPY of the foregoing mailed and/or via facsimile
this 21 day of June, 2005, to:

OFFICE OF THE U.S. TRUSTEE
P.O. Box 36170
Phoenix, Arizona 85067-6170

Chris Raboin
901 W. McDowell Rd.
Phoenix, Arizona 85007
Attorney for Larry Meyers and Dawn Burstyn-Meyers and Meyers Enterprises

David Brooks
Brooks & Affiliates, PLC
123 N. Centennial Way, Suite 207
Mesa, Arizona 85201
Attorney for Mark Johnson

Shelton L. Freeman

- 7 -

1 Sara J. Vance
2 DeConcini McDonald Yetwin & Lacy, P.C.
2025 N. Third Street, Suite 230
3 Phoenix, Arizona 85004
Attorneys for Plaintiff SWTV
4 /s/ illegible signature
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 8 -